IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ANTONIO LASHAWN WARFIELD,<br><br>　　　　Defendant. | )<br>)　CRIMINAL NO.   3:20-cr-104<br>)<br>)　DEFENDANT'S BRIEF IN SUPPORT OF<br>)　MOTION TO SUPPRESS EVIDENCE<br>)　AND STATEMENT AND REQUEST<br>)　FOR EVIDENTIARY HEARING<br>)<br>) |

**TABLE OF CONTENTS**

I.　　INTRODUCTION.................................................................................................1

II.　 THE STOP OF THE VEHICLE AND CONTINUED DETENTION AND QUESTIONING VIOLATED DEFENDANT'S FOURTH AMENDMENT RIGHTS. ..............................................................................................................2

III.　THE AGENTS LACKED PROBABLE CAUSE TO SEARCH THE VEHICLE.......3

IV.　 THE SEARCH OF THE AUTOMOBILE WAS NOT A VALID SEARCH INCIDENT TO ARREST......................................................................................4

V.　 THE SEARCH OF THE AUTOMOBILE CANNOT BE JUSTIFIED AS A VALID CONSENT TO SEARCH………………………………………………………….....6

VI.　MR. WARFIELD'S STATEMENT SHOULD BE SUPPRESSED…………………...8

VII. CONCLUSION……………………………………………………………………….10

I.　　INTRODUCTION

　　　According to police reports, on October 22, 2019, Davenport, Iowa, police officers conducted a traffic stop of a vehicle which was being operated by the defendant, Antonio

1

Warfield. The police reports state that prior to the stop, Officer Crow thought that the vehicle had front windows which were tinted beyond what the law allowed. It is further alleged that after the vehicle was stopped, officers smelled marijuana coming from the vehicle. Mr. Warfield was asked to step out of the vehicle, but he refused to do so. Officers then made a determination that Mr. Warfield had outstanding arrest warrants, although it appears that the information regarding the warrants was incorrect. Mr. Warfield was then physically removed from the vehicle. It is alleged that Mr. Warfield subsequently consented to a search of the vehicle. It is further alleged that during the search of the vehicle, officers located two marijuana "blunts" and a firearm. It is also alleged that Mr. Warfield was questioned about the firearm, without being Mirandized. Mr. Warfield has now been charged with felon in possession of a firearm.

II. **THE STOP OF THE VEHICLE AND CONTINUED DETENTION AND QUESTIONING VIOLATED DEFENDANT'S FOURTH AMENDMENT RIGHTS.**

Stopping an automobile and detaining its occupants constitutes a seizure within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention brief. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Whren v. United States*, 517 U.S. 806, 809-810 (1996) ("temporary detention of individuals during the stop of an automobile by police, even if only for a brief period and for a limited purpose, constitutes a seizure of persons..."). To be legal, an automobile stop must be reasonable. *Id*. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. *Id.* (citations omitted). However, the Fourth Amendment does not allow a discretionary automobile stop that is unsupported by any

articulable, reasonable suspicion of a violation. *See Prouse*, at 440 U.S. 648,663. In the present case, it is the defense position that officers did not have either reasonable suspicion or probable cause to stop the vehicle.

An officer making a traffic stop does not violate the Fourth Amendment by asking the driver his destination and purpose, checking the license and registration, or requesting the driver to step over to the patrol car. *United States v. Poulack*, 236 F.3d 932, 935 (8th Cir. 2001), citing *United States v. Ramos*, 42 F.3d 1160, 1163 (8th Cir. 1994). An investigative stop must be temporary and must last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983). If the officer develops a reasonable, articulable suspicion of criminal activity beyond the reason for the traffic stop, the officer may expand the scope of the inquiry and detain the occupants of the automobile for further investigation. *Poulack,* at 936, citing *United States v. Carrate*, 122 F.3d 666, 668 (8th Cir. 1997). Whether the officer had reasonable suspicion to expand the scope of the stop is determined by looking at "the totality of the circumstances, in light of the officer's experience." *Id.* In the present case, under the totality of circumstances, the police did not have reasonable suspicion to expand the scope of the stop.

**III.    THE AGENTS LACKED PROBABLE CAUSE TO SEARCH THE VEHICLE.**

Although motor vehicles have been afforded a diminished expectation of privacy, due to their inherent mobility, searches of motor vehicles must, nonetheless, comply with constitutional standards. Warrantless vehicle searches are permitted under what is commonly referred to as the "automobile exception" to the Fourth Amendment, only when, probable cause exists before searching the vehicle. See *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (allowing the

search of a vehicle that is readily mobile when probable cause exists to believe it contains contraband); *United States v. Ross*, 456 U.S. 798, 807-08 (1982) (noting the Court in the past has emphasized the importance of officers having probable cause that the vehicle contains contraband before they may search). Law enforcement must have probable cause to justify the warrantless search of a motor vehicle. *United States. v. Ameling*, 328 F.3d 443, 448 (8th Cir. 2003). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007), *citing Illinois v. Gates*, 462 U.S. 213, 238 (1983). The evaluation of whether probable cause exists is a "commonsense, practical question" in light of the "totality of the circumstances." *Gates* at 230.

In the present case, the agents lacked probable cause to search the vehicle. It had been determined that the front windows were tinted beyond what the law allowed. If police suspected that marijuana was in the vehicle, a drug sniffing dog could have been brought to the scene. There were no facts observed by the officers that suggested illegal activity beyond the reason for the stop. Mr. Warfield should have been free to leave the scene rather than being subjected to further detention for the purpose of conducting a search of the vehicle.

IV. **THE SEARCH OF THE AUTOMOBILE WAS NOT A VALID SEARCH INCIDENT TO ARREST.**

Law enforcement has alleged that after the traffic stop in this case, and after Mr. Warfield had been removed from the vehicle, a search of the vehicle was done. Initially, a search incident to arrest is valid only if the underlying arrest is lawful. *New York v. Belton*, 453 U.S. 454, 460 (1981)). In the present case, because the arrest of Warfield was unlawful, the search incident to that arrest was also illegal.

4

Even in the case of a lawful arrest, however, the search of the vehicle in this case was not a valid search incident to arrest. In *Arizona v. Gant*, 556 U.S. 332 (2009), the United States Supreme Court held that police may search the passenger compartment of a vehicle incident to a recent occupant's arrest only if it is reasonable to believe that the arrestee might access the vehicle at the time of the search or that the vehicle contains evidence of the offense of arrest. 556 U.S. at 351. Neither circumstance was present in Mr. Warfield's case.

In *Gant*, the United States Supreme Court reiterated the longstanding rule that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions." 556 U.S. at 338, citing *Katz v. United States*, 389 U.S. 347, 357 (1987). One of the exceptions is a search incident to lawful arrest, which derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations. *Id*. (internal citations omitted).

The instant case and the *Gant* case have similar fact patterns. In both cases, the defendant was stopped for a minor violation. 556 U.S. at 335. In both cases, the defendant had been secured in police custody prior to the search of the vehicle taking place. *Id*. In both cases, officers claimed that they found evidence of contraband. *Id*.

In the present case, Mr. Warfield was in police custody prior to the commencement of the search of the automobile. Therefore, police could not reasonably believe that he could have accessed the vehicle at the time of the search. In addition, Mr. Warfield was stopped for illegally tinted front windows, an offense for which a police officer could not expect to find evidence inside of the vehicle. Because neither circumstance justifying a vehicle search

incident to arrest existed in the case, the search of the vehicle was unreasonable. *Gant,* 556 U.S. at 351. Therefore, all evidence which was seized from the vehicle should be suppressed.

**V.  THE SEARCH OF THE VEHICLE CANNOT BE JUSTIFIED AS A VALID CONSENT TO SEARCH.**

**A.  The consent to search the vehicle was not voluntary.**

"A search based upon an individual's consent may be undertaken by law enforcement agents without a warrant or probable cause, and any evidence discovered during the search may be seized and admitted at trial." *United States v. Heath*, 58 F.3d 1271, 1275 (8th Cir. 1995). (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). A court determines whether consent is voluntary under the totality of circumstances. *United States v. Esquivel*, 507 F.3d 1154, 1159 (8th Cir. 2007). (citations omitted). The government bears the burden of proving voluntary consent by a preponderance of the evidence and must show that the defendant behaved in such manner that the officer reasonably believed that the search was consensual. *Id*.

The Eighth Circuit has set forth several factors to consider in evaluating the voluntariness of an individual's consent:

1. Age;
2. General intelligence and education;
3. Whether an individual was under the influence of drugs, alcohol, or otherwise;
4. Whether an individual was informed of his or her Miranda rights prior to the consent; and
5. Whether an individual had experienced prior arrests so that he or she was aware of the protections the legal system affords to suspected criminals.

*United States v. Hathcock*, 103 F.3d 715, 719 (8th Cir. 1997). *Id.* (citing *United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990).

A court should also consider the environment in which the alleged consent took place, including:

(1) The length of time he was detained;
(2) Whether the police threatened, physically intimidated, or punished him;
(3) Whether the police made promises or misrepresentations;
(4) Whether he was in custody or under arrest when the consent was given;
(5) Whether the consent occurred in a public or secluded place; and
(6) Whether he stood by silently...as the search occurred.

*United States v. Esquivel*, 507 F.3d 1154, 1159 (8th Cir. 2007).

Mr. Warfield is 28 years old. He had been detained continuously since his arrest on the vehicle stop. At the time of the search, Mr. Warfield was in police custody, and there were numerous law enforcement officers present. He had not been Mirandized and he was not told that he had a right to refuse consent. Given all of the above circumstances, Mr. Warfield's consent to search the vehicle was not voluntary.

**B. The Fourth Amendment violation tainted the subsequent consent to search.**

Even if Mr. Warfield's consent to the vehicle search had been voluntary, however, further judicial inquiry must be undertaken. The Eighth Circuit Court of Appeals has stated that if voluntary consent was preceded by an illegal police action, the court must determine if the voluntary consent was an independent lawful cause of the search. *United States v. Esquivel*, 507 F.3d 1154, 1160 (8th Cir. 2007). That question turns on three factors set forth in *Brown v. Illinois*, 422 U.S. 590 (1975). These factors are 1) the temporal proximity between the Fourth Amendment violation and the consent, 2) the presence of any intervening circumstances, and 3) the purpose and flagrancy of the officer's Fourth Amendment violation. *See United States v. Barnum*, 564 F. 3d 964, 971 (8th Cir. 2009).

With regard to the first factor, in Mr. Warfield's case, it will likely be determined at an evidentiary hearing how much time took place between the police illegality and Mr. Warfield's consent to the vehicle search. In the present case, no time had elapsed between the illegal arrest

and the consent, therefore this factor favors Mr. Warfield. Likewise, because Mr. Warfield was still in custody at the time of the search, there were no intervening circumstances between the illegal police conduct and the consent. This factor also favors Mr. Warfield.

Finally, as was stated above, while the police obviously wanted to stop the vehicle, there was no legal basis for doing so. It is apparent that the illegal stop "was investigatory in design and purpose" and "executed in the hope that something might turn up." *See United States v. Simpson*, 439 F.3d 490, 496 (8th Cir. 2006). Again, this factor leads to the conclusion that the alleged consent to search did not purge the taint of the illegal actions of law enforcement, and the results of the vehicle search should be suppressed.

## VI. MR. WARFIELD'S STATEMENT SHOULD BE SUPPRESSED.

### A. The defendant's statement should be suppressed because it was a product of the illegal stop and continued detention of Mr. Warfield

The exclusionary rule applies to both the indirect and the direct products of an illegal search and seizure. *Murray v. United States*, 487 U.S. 533, 536-37 (1988); *Wong Sun v. United States*, 371 U.S. 471 (1963). The giving of a *Miranda* warning does not by itself break the causal chain between an illegal search and arrest and a defendant's subsequent statements. *Brown v. Illinois*, 422 U.S. 590, 602 (1975) (statements suppressed as fruit of illegal arrest). While *Miranda* warnings are an important factor in determining whether statements are the product of an illegal arrest, the court must look to other factors as well: "the temporal proximity of the arrest and the confession, the presence of intervening circumstances, ...and particularly, the purpose and flagrancy of the official misconduct are all relevant...The voluntariness of the statement is a threshold requirement...and the burden of showing admissibility rests, of course, on the prosecution." *Id.* at 603-4. Confessions, even if voluntary and given after *Miranda*

rights, can nonetheless be considered, "fruit" of the prior illegal conduct unless the taint has been purged. *Taylor v. Arizona*, 457 U.S. 687 (1982)(six hour delay between illegal arrest and confession, the giving of *Miranda* warnings three times, and a meeting between defendant and his girlfriend did not attenuate the taint of the illegal arrest).

As was stated above, there were no intervening circumstances which occurred prior to the initial stop and Mr. Warfield's statement. Mr. Warfield was in custody the entire time between his arrest and his statement. The police officers clearly used the illegal arrest to obtain a confession from Mr. Warfield. Mr. Warfield's statement, like the defendant's statements in *Brown*, should be suppressed as a fruit of the illegal police conduct.

> **B. Defendant's statement should be suppressed because his Fifth Amendment rights were violated.**

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that the Fifth Amendment guarantees an accused the right to have counsel present during custodial interrogation. The right to counsel in such a situation is necessary, the court concluded, because in custody police interrogation of an accused, "contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id.* at 467. An individual is in custody if he is "deprived of his freedom of action in any significant way." *Id.* Interrogation has been defined as "either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291,300-01(1980). Interrogation includes any words or actions on the part of police...that "the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id*. at 301. It is clear that Mr. Warfield was in custody and that he was being interrogated at the time of his statements in this matter.

9

With regard to Mr. Warfield's statement, the government must prove not only that Mr. Warfield voluntarily waived his *Miranda* rights but that the waiver constituted "a knowing and intelligent relinquishment or abandonment of a known right or privilege." *Edwards v. Arizona,* 451 U.S. 477, 482 (1981).   The government must prove that the totality of circumstances surrounding the interrogation revealed both an uncoerced choice and the requisite level of comprehension.   *Moran v. Burbine*, 475 U.S. 412, 421 (1986).   There is no indication that Mr. Warfield was Mirandized in the present case, let alone that he voluntarily waived his Miranda rights.   Based on the circumstances described above which were present at the time of Mr. Warfield's statement, the government cannot make this showing and the statement should be suppressed.

## VII.   CONCLUSION

The evidence seized from the automobile should be suppressed in this matter.   In addition, Mr. Warfield's statement should be suppressed.

FEDERAL DEFENDER'S OFFICE
CBI Bank & Trust Building
101 W. 2nd Street, Suite 401
Davenport, Iowa 52801-1815
TELEPHONE:   (563) 322-8931
TELEFAX:   (563) 383-0052
EMAIL:   terry_mcatee@fd.org

By:   /s/ *Terence McAtee*
**Terence McAtee**
Assistant Federal Defender
ATTORNEY FOR DEFENDANT

cc: Cliff Cronk, AUSA

CERTIFICATE OF SERVICE
I hereby certify that on October 12, 2021, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.
/s/Amanda Hruby-Carstensen