```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF IOWA
2                        DAVENPORT DIVISION

3   UNITED STATES OF AMERICA,)
                             )
4               PLAINTIFF,   )
                             ) CRIMINAL ACTION
5          VS.               ) FILE NO. 3:20-cr-104
                             )
6                            )
    ANTONIO LASHAWN WARFIELD,) TRANSCRIPT OF PLEA
7                            ) PROCEEDINGS
                DEFENDANT.   )
8   _____)

9

10          BEFORE THE HONORABLE STEPHEN B. JACKSON, JR.
               Tuesday, March 29, 2022, 9:02 a.m.
11                    Davenport, Iowa 52801

12
    APPEARANCES:
13
         FOR THE GOVERNMENT:     CLIFFORD CRONK
14                               ASSISTANT U.S. ATTORNEY
                                 131 E. Fourth Street
15                               Davenport, Iowa 52801

16       FOR THE DEFENDANT:      ERIC TINDAL
                                 ATTORNEY AT LAW
17                               2322 E. Kimberly Rd., Ste. 140S
                                 Davenport, Iowa 52807
18

19

20              DEBRA M. THORNBURG, CSR, RPR, CRR
21            FEDERAL OFFICIAL COURT REPORTER
                 UNITED STATES COURTHOUSE
22                131 EAST FOURTH STREET
                  DAVENPORT, IOWA 52801
23

24  PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
    PRODUCED BY CAT
25
```

P R O C E E D I N G S

1  THE COURT:  Good morning.  This case is United
2  States of America v. Antonio Warfield.  This is Case No.
3  3:20-CR-104.  We're here today for a change of plea hearing.
4  The Government is represented by Assistant Federal Defender
5  Cliff Cronk.  Antonio Warfield appears with his attorney, Eric
6  Tindal.

7  Counsel, just to remind you, please turn off your
8  cellphones and stow them with any electronic devices during
9  our hearing today.

10  Mr. Warfield, I'm United States Magistrate Judge
11  Stephen Jackson, Jr.  I remind you of who I am and the type of
12  judge I am because I need to be sure that you understand your
13  case is also assigned to a district judge, and for you that is
14  Chief Judge Stephanie Rose.  I let you know that because you
15  have the right to have a district judge preside over any
16  guilty plea proceeding.  As a magistrate judge, I can preside
17  over this hearing, but only with your voluntary consent.

18  And so Mr. Warfield, I need to confirm, do you agree
19  this guilty plea proceeding may be conducted by me?

20  THE DEFENDANT:  Yeah.

21  THE COURT:  I'm sorry?

22  THE DEFENDANT:  Yes.

23  THE COURT:  Did you sign a written consent this
24  morning to that same effect?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Mr. Tindal, did you sign the consent for

3     your client?

4          MR. TINDAL:  I did, your Honor.

5          THE COURT:  Mr. Cronk, did you sign the consent for

6     the Government?

7          MR. CRONK:  Yes, your Honor.

8          THE COURT:  Thank you.  That will be filed with our

9     clerk.  Even though I'll be conducting this guilty plea

10    hearing, Mr. Warfield, your sentencing will still be conducted

11    by Judge Rose.  Do you understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  And then so before I can recommend to

14    Judge Rose that she accept your guilty plea, I must ask you

15    certain questions, and your answers to those questions need to

16    be under oath, so at this time I'm gonna ask you to please

17    stand.  Our clerk is going to place you under oath.

18         **DEFENDANT SWORN**

19         THE COURT:  You can have a seat, Mr. Warfield.

20         So you're now under oath.  I need to be sure you

21    understand if you make any false statements, you may be

22    prosecuted for the crime of perjury and/or the crime of making

23    a false statement.  Those are two separate crimes.  Do you

24    understand you are now under oath and that you are required to

25    tell the truth?

1            THE DEFENDANT:  Yeah.

2            THE COURT:  Would you please state your full name?

3            THE DEFENDANT:  Antonio LaShawn Warfield.

4            THE COURT:  How old are you?

5            THE DEFENDANT:  38.

6            THE COURT:  How far did you go in school?

7            THE DEFENDANT:  To 8th.

8            THE COURT:  8th grade?

9            THE DEFENDANT:  Yeah.

10           THE COURT:  Did you ever get a GED?

11           THE DEFENDANT:  I got my GED.  Yeah.

12           THE COURT:  Okay.  Did you ever have any training or

13   courses after you got your GED?

14           THE DEFENDANT:  No, sir.

15           THE COURT:  Do you have any difficulty reading or

16   understanding the English language?

17           THE DEFENDANT:  No, sir.

18           THE COURT:  Good.  It's very important you

19   understand absolutely everything we do here today, so during

20   this hearing at any time if something comes up that you

21   doesn't understand or you simply don't hear something someone

22   says or you feel like you need to discuss anything with Mr.

23   Tindal, will you let me know that?

24           THE DEFENDANT:  Yeah.

25           THE COURT:  That's so important, Mr. Warfield, you

1    have permission to interrupt me or any one of us today if you

2    need to talk to your attorney or have something repeated or

3    explained to you.  Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Will you do that if you need to?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Good.  First I need to ask you some

8    preliminary questions to make sure that you are able to

9    understand your rights.  Have you ever suffered from

10   depression, anxiety or any other mental illness?

11             THE DEFENDANT:  No, sir.

12             THE COURT:  Have you ever abused drugs or alcohol?

13             THE DEFENDANT:  No, sir.

14             THE COURT:  Do you take any prescription medication?

15             THE DEFENDANT:  No, sir.

16             THE COURT:  Do you know of any reason why you might

17   have difficulty understanding these proceedings?

18             THE DEFENDANT:  No, sir.

19             THE COURT:  Mr. Tindal, do you have any reason to

20   believe that your client might not be competent to enter a

21   guilty plea?

22             MR. TINDAL:  No, your Honor.

23             THE COURT:  So Mr. Warfield, you're charged by

24   indictment in one count with the crime of being a Felon in

25   Possession of a Firearm.  Have you had a chance to discuss

1    that charge in detail would your attorney?

2              THE DEFENDANT:  Yes.

3              THE COURT:  I'm advised that you wish to change your

4    previous plea of not guilty and that you desire to go forward

5    today and enter a plea of guilty to Count 1.  Is that correct?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Before we go any further, I need to be

8    sure you understand you are not required to enter any guilty

9    plea today.  If you want, you can continue and persist in your

10   plea of not guilty and go to trial.  Do you understand that?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Even though you do understand that, do

13   you still desire to go forward today --

14             THE DEFENDANT:  Yes.

15             THE COURT:  -- and enter a plea of guilty to Count

16   1?

17             THE DEFENDANT:  Yes.

18             THE COURT:  All right.  We're doing well so far.

19   You're not talking when I'm talking, but just take a pause and

20   make sure I'm done with my question, and I'll make sure you're

21   done with your answer before I go on, okay?

22             THE DEFENDANT:  All right.

23             THE COURT:  Our court reporter is excellent, but she

24   can't report when two people talk at the same time.  So Mr.

25   Warfield, before I can recommend to Judge Rose that she accept

1  that guilty plea, I need to ask you additional questions to be

2  sure you understand your rights.  First, you have the right to

3  have a lawyer help and represent you at every stage of your

4  case.  In this case Attorney Eric Tindal has been appointed to

5  represent you at public expense.  I want to make sure that you

6  understand if you wanted to maintain your plea of not guilty

7  and go to trial, Mr. Tindal would continue to represent you

8  throughout that trial at no expense to you.  Do you understand

9  that?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Do you have any questions about your

12  right to an attorney in this case?

13         THE DEFENDANT:  No.

14         THE COURT:  Are you generally satisfied with the

15  advice, services, and representation you've received from your

16  attorney in this case?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Is there anything you've asked your

19  attorney to do for you in this case that he's not done for

20  you?

21         THE DEFENDANT:  No.

22         THE COURT:  Good.  Next I want to talk to you about

23  your trial rights.  You have the right to a speedy and public

24  trial before a jury of 12 people selected from a cross-section

25  of the community.  Both you and your attorney would help

1    choose the people who would serve on your jury.  Any verdict

2    by the jury would have to be unanimous.  That means all 12

3    jurors would have to agree to the verdict.  Your jurors would

4    promise under oath to try your case fairly based only on what

5    is submitted into evidence at the trial and on the

6    instructions given to them by Judge Rose.  Do you understand

7    your right to a jury trial?

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  You also have the presumption of

10   innocence.  Judge Rose would tell the jury that you are

11   presumed innocent, and she would tell them the presumption of

12   innocence remains with you unless at the end of your trial the

13   Government has convinced the jury of your guilt beyond a

14   reasonable doubt.  Judge Rose would also tell the jury that

15   the presumption of innocence alone is enough for you to be

16   found not guilty of these charges.

17                   Do you understand that?

18                   THE DEFENDANT:  Yes.

19                   THE COURT:  You also have what is called the right

20   to confrontation.  That means the Government would have to

21   call its witnesses to testify under oath here in court.  You

22   would be able to see the witnesses as they testify, and they

23   would be able to see you.  Your attorney would not have to

24   question the Government's witnesses, but if he wanted to, he

25   could confront them by cross-examining them.  Do you

1    understand that by pleading guilty, you're giving up your

2    right to confront witnesses?

3              THE DEFENDANT:  Yes.

4              THE COURT:  You also have the right to present a

5    defense.  The burden of proof remains on the Government

6    throughout the trial.  You would not have to put on a defense

7    or produce any evidence, but if you wanted to, you could

8    present any relevant evidence to the jury.  For example, you

9    could make witnesses come to court by having subpoenas served

10   on them.  If you could not afford to pay the costs necessary

11   to serve the subpoenas or get your witnesses to court, I would

12   make the Government pay those costs.

13             Do you understand that by pleading guilty, you're

14   giving up your right to present any defense?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Finally, you have the right to remain

17   silent.  You can testify at the trial if you want to, but you

18   would not have to.  If you decided not to testify, the

19   prosecutor would not say anything about it to the jury.  In

20   fact, Judge Rose would tell the jurors that you have a

21   constitutional right not to testify, and she would also tell

22   them they must not hold it against you if you do not testify.

23             Do you understand that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  To summarize, if you plead guilty here

1    today, you will not have a trial.  Instead you'll be judged

2    guilty based solely on your guilty plea in the same way as if

3    a jury had returned a guilty verdict against you.  Mr.

4    Warfield, do you understand that by pleading guilty, you're

5    giving up your right to a jury trial?

6                THE DEFENDANT:  Yes.

7                THE COURT:  I want to talk with you next about the

8    penalties which apply in your case.  On Count 1 you can be

9    sent to prison for up to ten years.  Following your

10   imprisonment, you can be placed on a term of supervised

11   release for up to three years.  In addition to both of those

12   things, you can be fined up to $250,000.  You will have to pay

13   a mandatory special assessment of $100, and the judge has the

14   power to order forfeiture of property and restitution.

15               Mr. Cronk, what's the status of the potential

16   application of the Armed Career Criminal Act in this case?

17               MR. CRONK:  Mr. Tindal and I and previous counsel

18   have discussed that, and that's not clear at this point, but

19   we don't believe that he does qualify as an Armed Career

20   Criminal.

21               THE COURT:  All right.  And so when you say it's not

22   clear, is there some other information out there you don't

23   have yet or just give me a sense of what your thoughts are.

24               MR. CRONK:  My thoughts are that the area of crimes

25   of violence is very fluid and because it's difficult to know

1    whether one conviction is gonna be considered a qualifying

2    offense isn't well settled and we just don't know for sure.

3             THE COURT:  Especially given the Cook County

4    convictions?

5             MR. CRONK:  That's one of the reasons, yes.

6             THE COURT:  I'm just looking at the Bail Bond

7    Report.  I see a lot there, and usually that's the area that

8    presents -- that things aren't clear, given the difficulty

9    sometimes in getting those records or determining that.

10             MR. CRONK:  Our best judgment at this point is that

11    he does not qualify as an Armed Career Criminal.

12             THE COURT:  All right.  Mr. Tindal, your thoughts?

13             MR. TINDAL:  I agree with the Government in this.  I

14    looked at his criminal history very closely to try to

15    understand that because obviously that makes a big difference

16    in a case like this, and I agree I don't believe he's ACCA,

17    but in the event probation should disagree with that

18    calculation, we do have some reservation of rights within the

19    plea should that occur in that I think the parties agree that

20    he would be able to withdraw his plea and maintain his 410

21    rights in that one scenario, is if he is determined to be

22    ACCA, but our best look at it and examination is that he is

23    not and so that's kind of how I see it anyway.

24             THE COURT:  All right.  And have you discussed with

25    Mr. Warfield if he were determined to be an Armed Career

1    Criminal what that would mean for potential sentencing and
2    penalties?
3             MR. TINDAL:  Yeah.  We've certainly discussed that
4    it would go from a 10-year statutory maximum to a 15-year
5    statutory minimum, and that's part of the reason why there's
6    some negotiated paragraphs in the plea agreement that address
7    that issue.
8             THE COURT:  Is that in the addendum or the
9    amendment, I should say?
10            MR. TINDAL:  I would say it's in a couple of parts.
11   One, it's in the paragraph concerning the statutory maximums
12   that are set out that all the parties are agreeing apply to
13   this plea at this point because we don't believe he's ACCA,
14   but it is also with the addendum and the reservation of 410
15   rights, so I think it's everybody's understanding that if he's
16   ACCA, that we're gonna need to revisit this plea.
17            THE COURT:  Is that your understanding as well, Mr.
18   Cronk?
19            MR. CRONK:  It is.
20            THE COURT:  Okay.  I can't, nor am I going to,
21   comment on whether Mr. Warfield if he enters a plea today
22   would be able to withdraw that under any circumstances.  I
23   understand the amendments relating to the 410 provisions which
24   is an agreement in the contract between the parties in that
25   regard.  Obviously the withdrawal of a plea takes Court

1    approval as well and so I just want everybody to be clear that

2    nothing that I say or do or don't say concerning a potential

3    withdrawal of a plea is meant to suggest that that would be

4    allowed by the Court.  Is that fair?

5                 MR. TINDAL:  Yes, your Honor.

6                 MR. CRONK:  Yes, your Honor.

7                 THE COURT:  All right.  So Mr. Warfield, do you

8    understand what I was just talking about with both the

9    Government's attorney, Mr. Cronk, and Mr. Tindal as well?

10                 THE DEFENDANT:  Yes.

11                 THE COURT:  So we're talking about the penalties

12   that apply in your case, and I've advised you that you have

13   the maximum of up to 10 years in prison, $250,000 fine and

14   supervised release term of up to 3 years with special

15   assessment of $100.  However, if your criminal history shows

16   that you have any combination of 3 -- of convictions for 3

17   violent felonies and serious drug offenses, then your

18   penalties would be increased and you would have a mandatory

19   minimum 15-year prison term up to life in prison, still a fine

20   of $250,000 but a term of supervised release of up to 5 years.

21   Do you understand that?

22                 THE DEFENDANT:  Yes.

23                 THE COURT:  And have you talked about all that with

24   Mr. Tindal?

25                 THE DEFENDANT:  Yes.

1          THE COURT:  And so you understand what it means to

2     be considered to be an Armed Career Criminal as well as what

3     the penalties would be with that.  Is that right?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.  Do you have any questions about

6     the minimum or maximum penalties which may be imposed in this

7     case?

8          THE DEFENDANT:  No.

9          THE COURT:  At the time of sentencing, Judge Rose

10    will perform a calculation under the Federal Sentencing

11    Guidelines.  Those are guidelines issued by the United States

12    Sentencing Commission.  That calculation will result in what

13    is called an Advisory Guideline Range.  That is a range of

14    months within which the sentencing commission suggests that

15    you be sent to prison.  Judge Rose must consider this range in

16    determining your sentence, but she's not required to sentence

17    you within that range.

18          So long as the sentence she gives you is reasonable,

19    she can depart from the Advisory Guideline Range based on the

20    factors listed in the sentencing guidelines or she can vary

21    from the range based on the factors listed in the sentencing

22    statutes.  So you could receive a sentence below or above the

23    Advisory Guideline Range.  In fact, you could receive a

24    sentence all the away up to the maximum statutory, which is

25    ten years in prison.  Do you have any questions about that?

1          THE DEFENDANT:  No, sir.

2          THE COURT:  You need to know you'll be in custody

3   for all of any prison term you receive reduced only by credit

4   for good time you may earn.  Further, whatever sentence you do

5   receive, you will not see a parole board or be paroled out of

6   prison because there is no parole in the federal court system.

7          Mr. Warfield, do you have any questions about any of

8   that?

9          THE DEFENDANT:  No, sir.

10          THE COURT:  Mr. Tindal, have you given your client

11   the benefit of your advice as to the potential range of

12   punishment that you believe he realistically faces by pleading

13   guilty?

14          MR. TINDAL:  Yes, your Honor.

15          THE COURT:  Mr. Warfield, do you understand that the

16   punishment is for Judge Rose to decide, and it might very well

17   be different than what has been predicted by Mr. Tindal?

18          THE DEFENDANT:  Yeah.

19          THE COURT:  Do you also understand you cannot

20   withdraw your guilty plea simply because your sentence might

21   be different than what has been predicted for you?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Mr. Warfield, are you a United States

24   citizen?

25          THE DEFENDANT:  Yes.

1    THE COURT:  Then you need to know as a result of

2    this conviction, you'll be deprived of the right to vote, to

3    serve on a jury, to hold public office and to possess firearms

4    and ammunition.  Do you understand the loss of rights

5    associated with a felony conviction?

6    THE DEFENDANT:  Yes.

7    THE COURT:  Once you've served your prison term,

8    you'll be placed on supervised release.  During that time your

9    conduct is monitored by a probation officer.  There are a

10   number of standard conditions of supervised release.  Those

11   include that you cannot commit any federal, state or local

12   crimes, nor can you possess firearms, ammunition or illegal

13   controlled substances.

14   Judge Rose can also impose additional special

15   conditions.  If you violate any of the conditions of your

16   supervised release, the judge can revoke it and require you to

17   serve up to an additional two years in prison without any

18   credit for time previously served.  Do you understand that?

19   THE DEFENDANT:  Yes.

20   THE COURT:  Do you have any questions about the

21   requirements of supervised release?

22   THE DEFENDANT:  No.

23   THE COURT:  Mr. Cronk, are there any other

24   collateral consequences or potential collateral consequences

25   that we should discuss?

1          MR. CRONK:  Not that I can think of, your Honor.

2          THE COURT:  Mr. Tindal, how about you?

3          MR. TINDAL:  Not that I'm aware of, your Honor.

4          THE COURT:  So Mr. Warfield, next before I can

5     recommend that Judge Rose accept a guilty plea from you, I

6     must establish facts to support a conviction in this case.

7     Count 1 charges you with being a Felon in Possession of a

8     Firearm.  To convict you of that offense, the Government would

9     be required to prove beyond a reasonable doubt four things.

10         First, that you knew you had been convicted of a

11    crime punishable by imprisonment for a term exceeding one

12    year.  Second, that thereafter you knowingly possessed a

13    firearm.  Third, that the firearm had been transported across

14    a state line sometime during or before your possession of it;

15    and four, some or all of this occurred in the Southern

16    District of Iowa.

17         Mr. Cronk, did I recite accurately the elements of

18    this charge?

19         MR. CRONK:  Yes, your Honor.

20         THE COURT:  Mr. Tindal, do you agree?

21         MR. TINDAL:  Yes, your Honor.

22         THE COURT:  Do you believe Mr. Warfield understands

23    the elements of the charge against him?

24         MR. TINDAL:  I do.

25         THE COURT:  Now, Mr. Warfield, I understand you've

1  entered into a plea agreement with the Government.  Is that
2  right?
3              THE DEFENDANT:  Yes.
4              THE COURT:  Do you have a copy of that in front of
5  you?
6              THE DEFENDANT:  Yeah.
7              THE COURT:  And you also entered into an amendment
8  to the plea agreement with the Government as well.  Is that
9  right?
10             THE DEFENDANT:  Yeah.
11             THE COURT:  And do you have a copy of that in front
12 of you?
13             THE DEFENDANT:  Yeah.
14             MR. TINDAL:  Your Honor, we don't have a copy of the
15 addendum.
16             THE COURT:  All right.  We can give you the original
17 amendment for the -- do you have a copy now?
18             MR. CRONK:  I gave him a copy, your Honor.
19             THE COURT:  Is that a signed copy?
20             MR. CRONK:  It is not.
21             THE COURT:  All right.  We'll give you the original
22 for purposes of this discussion.  Just make sure you return
23 it, please.
24             So let's look at page 12 of the plea agreement, Mr.
25 Warfield.  Are you there?  Are you there, Mr. Warfield?

1          THE DEFENDANT:  Yeah.

2          THE COURT:  Do you see at the bottom there's a line.

3     Below the line is your typewritten name, and above it is a

4     signature?

5          THE DEFENDANT:  Yeah.

6          THE COURT:  Is that your signature?

7          THE DEFENDANT:  Yes.

8          THE COURT:  What date did you sign this?

9          THE DEFENDANT:  On the 23rd of March.

10          THE COURT:  March 23?

11          THE DEFENDANT:  Yeah.

12          THE COURT:  Okay.  And then looking at page 2 of the

13     amendment to the plea agreement, do you have that?

14          THE DEFENDANT:  Yeah.

15          THE COURT:  And at the top of that page again

16     there's a line.  Below the line is your typewritten name and

17     above it is a signature.  Is that your signature?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And what date did you sign this?

20          THE DEFENDANT:  29th.

21          THE COURT:  So today?

22          THE DEFENDANT:  Yes, today.

23          THE COURT:  So with respect to both the plea

24     agreement and the amendment, did you review those documents in

25     detail before you signed them?

```
1              THE DEFENDANT:  Yes.

2              THE COURT:  Do you understand all the terms of the

3    plea agreement and the amendment?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Do you have any questions about the plea

6    agreement and the amendment to the plea agreement that you

7    reached with the Government?

8              THE DEFENDANT:  No, sir.

9              THE COURT:  Mr. Tindal, is that your signature on

10   page 13 on the plea agreement and page 2 on the amendment?

11             MR. TINDAL:  Yes, your Honor.

12             THE COURT:  Mr. Cronk, are those your signatures on

13   page 13 of the plea agreement and page 2 of the amendment?

14             MR. CRONK:  Yes, your Honor.

15             THE COURT:  Mr. Tindal, would you just state for the

16   record briefly the process that you undertook with Mr.

17   Warfield before these documents were signed and executed?

18             MR. TINDAL:  Yes, your Honor.  I believe this matter

19   was originally scheduled for a plea hearing at an earlier

20   date.  Prior to that earlier date, I had sent a copy of the

21   proposed plea to Mr. Warfield for his review in the Muscatine

22   County Jail.  Thereafter, due to some scheduling issues, I was

23   unable to meet with him to discuss the final plea agreement

24   and so I'd asked that this hearing be reset.

25             Last week on the 23rd I went to the jail.  I was
```

1    with Attorney Jaeger as well, and we went through the whole

2    plea agreement essentially paragraph by paragraph, answered

3    some questions.  As a result of that, Mr. Warfield signed the

4    document.  When I sent the document to Mr. Cronk, I identified

5    the -- essentially the subject of the amendment, the 410

6    issues, and in response to that, Mr. Cronk sent me back an

7    addendum to that one paragraph.

8              I reviewed it and met with my client this morning up

9    in the marshals' office to go through that addendum with him,

10   and he -- I then conferred with him if he had any questions

11   about that.  He signed it then once he came down here, but

12   there was a period of time of review before that happened.  I

13   also had generally discussed with him pleas, guidelines, all

14   those things a number of times before that.

15             THE COURT:  Thank you.

16             Mr. Warfield, you heard what your attorney said the

17   two of you did?

18             THE DEFENDANT:  Yeah.

19             THE COURT:  Okay.  Is everything he said true and

20   correct?

21             THE DEFENDANT:  Yes.

22             THE COURT:  All right.  Let's turn to page 2 and 3

23   of the plea agreement, Mr. Warfield.  Please let me know when

24   you're there.

25             THE DEFENDANT:  I got it.

1          THE COURT:  All right.  So do you see at the bottom
2     of page 2, paragraph 7 is titled factual basis?
3          THE DEFENDANT:  Yes.
4          THE COURT:  It says, As a factual basis for
5     defendant's plea of guilty, Defendant admits the following,
6     and then on page 3 there's subparagraphs A, B, C, and D.  Do
7     you see all that?
8          THE DEFENDANT:  Yes.
9          THE COURT:  Mr. Warfield, when you signed this plea
10    agreement, did you understand that by signing it, you were
11    admitting all the information in paragraph 7 and its
12    subparagraphs was true and correct?
13         THE DEFENDANT:  Yes.
14         THE COURT:  In fact, is all the information in
15    paragraph 7 and its subparagraphs true and correct?
16         THE DEFENDANT:  Yes.
17         THE COURT:  Before October of 2019, had you been
18    convicted for a crime punishable by a term of imprisonment
19    exceeding one year?
20         THE DEFENDANT:  No.
21    (Discussion held off the record between counsel and Defendant)
22         THE DEFENDANT:  I'm sorry.  Yes.  Thank you.
23         THE COURT:  A felony is defined under this statute
24    as a crime that has a potential punishment in excess of one
25    year.  So you've been convicted of a felony in the U.S.

1    District Court for the District of Minnesota prior to October

2    of 2019, right?

3            THE DEFENDANT:  Yes.

4            THE COURT:  And on October 22 of 2019, you knew you

5    had been previously convicted of such a crime.  Is that right?

6            THE DEFENDANT:  Yes.  And on that date in Davenport,

7    Iowa, you were in possession of a Taurus 9 millimeter

8    semi-automatic pistol.  Is that right?

9            THE DEFENDANT:  Yes.

10           THE COURT:  And you knew you were in possession of

11   that pistol on that day.  Is that right?

12           THE DEFENDANT:  Yes.

13           THE COURT:  On that date or since then did you know

14   or did you find out that that Taurus pistol was manufactured

15   outside the State of Iowa?

16           THE DEFENDANT:  I found out.

17           THE COURT:  You found out afterwards?

18           THE DEFENDANT:  Yeah.

19           THE COURT:  And so for you to have possession of

20   that in Davenport, Iowa, if it was manufactured outside of

21   Iowa, it would have crossed the state line to come into your

22   possession of it.  Is that right?

23   (Discussion held off the record between counsel and Defendant)

24           THE DEFENDANT:  Yes.

25           THE COURT:  Okay.  Do you understand that?

1          THE DEFENDANT:  Yeah.

2          THE COURT:  You talked about that with your attorney

3    a little bit?

4          THE DEFENDANT:  Yeah.

5          THE COURT:  All right.  Mr. Cronk, do you believe

6    that I've established an adequate factual basis for a guilty

7    plea here?

8          MR. CRONK:  Yes, your Honor.

9          THE COURT:  Mr. Tindal, do you agree?

10          MR. TINDAL:  I do, your Honor.

11          THE COURT:  And have you had full access to the

12    Government's discovery in this case?

13          MR. TINDAL:  I have, your Honor.

14          THE COURT:  Do you believe those materials also

15    support a factual basis for your client's guilty pleas?

16          MR. TINDAL:  I do.

17          MR. CRONK:  Do you know of any possible defense to

18    the charge that you've not considered and discussed with Mr.

19    Warfield?

20          MR. TINDAL:  None that I've not considered and

21    discussed.

22          THE COURT:  So Mr. Warfield, I want to be sure you

23    understand once your guilty plea is accepted by Judge Rose,

24    you will have no right to withdraw that guilty plea.  Do you

25    understand that?

1              THE DEFENDANT:  Yeah.

2              THE COURT:  If you do plead guilty today, I will

3    order something called a presentence investigation.  That

4    requires a probation officer to conduct a thorough

5    investigation of this case and prepare a draft presentence

6    report.  A copy of that draft report will be sent to both of

7    the attorneys.  Once you receive that report, you should go

8    through it carefully with Mr. Tindal.  Be sure to tell him

9    about any mistakes you find or important things that you

10   believe have been left out.  He will tell the probation

11   officer about those things, and the report can be revised, if

12   necessary, to make sure that it is complete and accurate.

13             Once a report is finalized, it will be sent to Judge

14   Rose, and you will then have a sentencing hearing.  At that

15   hearing the parties can present witnesses and exhibits on any

16   sentencing issue.  In addition, at that hearing you have the

17   right to speak directly to Judge Rose to tell her anything you

18   want her to know as she makes her sentencing decision.

19   Although it is your right to speak directly to her at that

20   time if you want to, it's also your right to choose not to say

21   anything to her if you do not want to.  Do you understand

22   that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Do you have any questions about the

25   sentencing procedure?

1           THE DEFENDANT:  No.

2           THE COURT:  You also should know that both the draft

3     and final presentence reports are sealed documents.  You shall

4     not disclose any part of either report or their contents to

5     anyone other than your attorney.  If you do so, you can be

6     prosecuted for contempt of court.

7           Do you understand that?

8           THE DEFENDANT:  Yes.

9           THE COURT:  I want to ask you to please turn to page

10    10 of the plea agreement, paragraph 26.  Are you there?

11          THE DEFENDANT:  Yeah.

12          THE COURT:  So generally both you and the Government

13    have the right to appeal your conviction and sentence to the

14    8th Circuit Court of Appeals.  In your case, however, Mr.

15    Warfield, as part of your plea agreement you have waived many

16    of the rights to appeal that you have except under those

17    limited circumstances set forth in paragraph 26.  This

18    paragraph provides that you waive all rights to appeal your

19    conviction including all motions, defenses and objections you

20    could assert to the charge or the Court's entry of judgment

21    against you except that both you and the Government reserve

22    the right to appeal any sentence imposed to the extent it is

23    authorized by law.  Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  This paragraph also provides that you

1    waive all rights to contest your conviction and sentence in

2    what are called post-conviction proceedings except that you

3    keep the right to appeal or seek post-conviction relief based

4    on the grounds of ineffective assistance of counsel or

5    prosecutorial misconduct.  Do you understand that as well?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Mr. Warfield, do you have any questions

8    about the limited rights to appeal that you are keeping or the

9    significant rights to appeal that you are giving up?

10           THE DEFENDANT:  No, sir.

11           THE COURT:  Mr. Warfield, has anyone forced or

12   pressured you to plead guilty or made any promises in order to

13   get you to plead guilty other than what is set forth in the

14   plea agreement?

15           THE DEFENDANT:  No, sir.

16           THE COURT:  Mr. Tindal, do you believe a guilty plea

17   in this case would be voluntary?

18           MR. TINDAL:  Yes, your Honor.

19           THE COURT:  Do you know of any legal reason why the

20   plea should not be accepted?

21           MR. TINDAL:  I do not.

22           THE COURT:  Do you know of anything I may have

23   omitted that could affect the validity of the plea?

24           MR. TINDAL:  No, your Honor.

25           THE COURT:  Mr. Cronk, do you know of anything I may

1    have omitted that could affect the validity of the plea?

2              MR. CRONK:  No, your Honor.

3              THE COURT:  Mr. Warfield, back to you.  You and I

4    have gone through a lot of information this morning.  I want

5    to be sure you understand absolutely all of it because I do

6    not want you to come back at any time in the future and state

7    or claim that you were confused or that someone forced you to

8    plead guilty.  Okay?

9              THE DEFENDANT:  Okay.

10             THE COURT:  So let's confirm, have you been able to

11   understand absolutely everything we've discussed here today?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you have any questions about any of

14   it?

15             THE DEFENDANT:  No.

16             THE COURT:  Is anyone forcing or pressuring you to

17   plead guilty?

18             THE DEFENDANT:  No.

19             THE COURT:  Is your guilty plea today voluntary and

20   your own decision?

21             THE DEFENDANT:  Yes.

22             THE COURT:  In that case, would you please stand?

23             Mr. Warfield, formally and for the record, how do

24   you plead to Count 1 of the indictment charging you with being

25   a Felon in Possession of a Firearm, in violation of Title 18

1  U.S. Code Sections 922 (g)(1) and 924 (a)(2), guilty or not

2  guilty?

3          THE DEFENDANT:  Guilty.

4          THE COURT:  The record should reflect the defendant,

5  Antonio Warfield, has pled guilty to Count 1 of the indictment

6  in violation of the code sections I have just cited.  You may

7  have a seat.

8          Based on the record made today, my review of the

9  materials submitted in connection with this hearing and my

10 observations of Mr. Warfield in open court as he responded to

11 my questions, I find he is competent, he fully understands the

12 charge against him.  There's a factual basis for his plea.  He

13 knows the maximum punishment that may be imposed on this

14 charge.  He knows his jury rights, and he has voluntarily

15 waived those rights.  I further find his decision to plead

16 guilty is voluntary, knowing, and not the result of any force,

17 pressure, threats or promises.

18         I therefore conclude Mr. Warfield should be found

19 guilty based upon his plea of guilty.  I also determine the

20 Government's established the requisite nexus between the

21 offense and property it seeks in forfeiture.  I will sign and

22 file my report and recommendation recommending that Judge Rose

23 accept Mr. Warfield's guilty plea.  Counsel will receive a

24 copy of the report, and the parties have 14 days to file

25 objections.  If no objections are made, then Judge Rose may

1   accept my recommendation and Mr. Warfield's guilty plea by

2   simply entering a written order doing so.  I also order a

3   presentence investigation.

4           The parties should pay careful attention to the

5   deadlines concerning the preparation of that report.  Those

6   deadlines will be set forth in an order to be issued by Judge

7   Rose's chambers.  I can advise, however, that the Government

8   shall provide a written statement of Defendant's offense

9   conduct in this case to defense counsel and probation on or

10  before April 12.  In addition, sentencing is set for July 25,

11  2022, at 1 p.m. July 25, 1 p.m.  Pending sentencing, pursuant

12  to the parties agreement, the previous order of detention

13  remains in place.

14          Mr. Cronk, anything further from the Government?

15          MR. CRONK:  No, your Honor.

16          THE COURT:  Mr. Tindal, anything else for Mr.

17  Warfield?

18          MR. TINDAL:  No, your Honor.

19          THE COURT:  All right.  Good luck, Mr. Warfield.

20  We're adjourned.

21          (Wherein the hearing concluded at 9:34 a.m.)

22

23

24

25

```
 1                     REPORTER'S CERTIFICATION

 2

 3          I, Debra Thornburg, a Certified Shorthand Reporter of the

 4     State of Iowa and Federal Official Realtime Court Reporter in

 5     and for the United States District Court for the Southern

 6     District of Iowa, do hereby certify, pursuant to Title 28,

 7     United States Code, Section 753, that the foregoing is a

 8     correct transcript of the stenographically reported

 9     proceedings held in the above-entitled matter and that the

10     transcript page format is in conformity with the regulations

11     of the Judicial Conference of the United States.

12

13                              /s/ Debra M. Thornburg

14                              Debra M. Thornburg
                                Official Court Reporter
15                              United States District Court
                                Southern District of Iowa
16

17                              Date:  October 19, 2022

18

19

20

21

22

23

24

25
```