UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

UNITED STATES OF AMERICA, )
)
PLAINTIFF, )
) CRIMINAL ACTION
VS. ) FILE NO. 3:20-cr-104
)
)
ANTONIO LASHAWN WARFIELD,) TRANSCRIPT OF SENTENCING
) PROCEEDINGS
DEFENDANT. )
_________________________)

BEFORE THE HONORABLE STEPHANIE ROSE.
Tuesday, September 27, 2022, 1:01 p.m.
Davenport, Iowa 52801

APPEARANCES:

FOR THE GOVERNMENT: CLIFFORD CRONK
ASSISTANT U.S. ATTORNEY
131 E. Fourth Street
Davenport, Iowa 52801

FOR THE DEFENDANT: ERIC TINDAL
ATTORNEY AT LAW
2322 E. Kimberly Rd., #140S
Davenport, Iowa 52807

DEBRA M. THORNBURG, CSR, RPR, CRR
FEDERAL OFFICIAL COURT REPORTER
UNITED STATES COURTHOUSE
131 EAST FOURTH STREET
DAVENPORT, IOWA 52801

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT PRODUCED BY CAT

P R O C E E D I N G S

THE COURT: We are here in the matter of United States v. Antonio LaShawn Warfield. It's Case No. 3:20-cr-104. The United States Probation Office is represented by Cliff Cronk. The Assistant U.S. Attorney's Office -- I'm sorry. U.S. Probation Office is represented by Linda Wolff. The Assistant U.S. Attorney`s office is represented by Cliff Cronk, and the defendant appears personally and is represented by his attorney, Eric Tindal.

Mr. Warfield, do you recall being in court in March and pleading to possession of a firearm as a prohibited person?

THE DEFENDANT: Yes.

THE COURT: All right. And I assume you recall that that offense is punishable by up to 10 years in prison, a fine of up to $250,000, a term of supervised release of up to 3 years and a special assessment of $100. Do you remember those penalties?

THE DEFENDANT: Yes.

THE COURT: And you understand you're here today to be sentenced?

THE DEFENDANT: Yes.

THE COURT: Okay. I have received and read the presentence report. The most recent report is dated July 11 of 2022, and it's filed at Docket 68. I've also read and

considered the arguments set forth in sentencing memorandums and exhibit filed at Docket 72 and 73.

Mr. Cronk, did you have a chance to review the presentence report on behalf of the United States?

MR. CRONK: Yes, your Honor.

THE COURT: And it looks like I'll need to resolve a legal issue related to the four-level adjustment under 2K2.1 (b)(6)(B) and the Government's motion for an upward departure for understated criminal history. Aside from those issues, anything else to be resolved today for the Government?

MR. CRONK: No, your Honor.

THE COURT: Mr. Tindal, did you have a chance to review the presentence report with your client?

MR. TINDAL: Yes, your Honor.

THE COURT: Could you please outline the process you used to do so?

MR. TINDAL: Yes. After receiving the draft PSR, a copy of that draft PSR was mailed to our client in the Muscatine County Jail, where he had an opportunity to review the document. We subsequently met in person and reviewed page by page the PSR and made requisite objections. After making those objections, we met again and discussed how to pursue those objections if at all. In this particular case we've withdrawn our objections as a factual matter, although we maintain them as a legal question.

THE COURT: All right. And other than the downward variance requested and the two issues that I talked with Mr. Cronk about, anything else to be resolved for your client?

MR. TINDAL: No, your Honor.

THE COURT: Mr. Warfield, did you have enough time to review your presentence report with your lawyer?

THE DEFENDANT: Yes.

THE COURT: Was he able to answer whatever questions you may have had?

THE DEFENDANT: Yes.

THE COURT: Have you been happy with him as your lawyer?

THE DEFENDANT: Yes.

THE COURT: Okay. Let's talk then about that guideline issue. It relates to an adjustment under 2K2.1 (b)(6)(B) for possessing a firearm in connection with another felony offense. The Government bears the burden of establishing this adjustment by a preponderance of the evidence. I hear a great deal of the information is uncontested in the presentence report.

Mr. Cronk, do you have additional evidence or argument you'd like to offer?

MR. CRONK: I don't have any evidence, your Honor.

THE COURT: All right. Argument?

MR. CRONK: Only briefly. First of all, under

Walker, the enhancement applies without any reference to the prior incident. In this case it applies because of the prior incident as well. The factors that counsel list as the factors the Court should look at is correct, but the time interval here is very short. The crime is almost exactly the same. Well, it is the same.

It's being in possession of a firearm, and the case law suggests that periods of far in excess of months, even years can sometimes be used to apply the in connection with another felony offense and even when it's not the same pistol. In this case we think the evidence is powerful that the defendant's driving around in this silver Chrysler 300. He has the pistol. He knows it's there, and he actually brandished it on one occasion where three people witnessed it in September, so roughly a little over a month before this incident. I think under the facts and the law, the enhancement applies.

THE COURT: Mr. Tindal?

MR. TINDAL: Your Honor, as this Court's aware, since Walker, the Iowa legislature has modified the law, and carrying weapons as it was traditionally understood to be in the context of Walker is now no longer unlawful, and so to the extent that Walker may technically apply, it's -- it is overrepresentative to the facts in this case. Further, your Honor, I think that while the PSR describes it as a small

black pistol, I think it's not clear that it's the same pistol that was at issue in this particular case, and it's not clear that it was even a firearm.

Innumerous cases throughout the State of Iowa involve items and objects that look like pistols that turn out not to be, and so the particular incident was reported. We aren't contesting the content to that report, that the people who were there indicate that it was a small black pistol. We just don't agree that there's sufficient proof that it was an actual firearm, let alone the firearm at issue here, and there were a number of weeks that passed between the incident and October, so for all those reasons, your Honor, we would argue that the enhancement is either not applicable or is overrepresented.

THE COURT: All right. In this case I do think the Government has established by a preponderance of the evidence that the enhancement applies. I'm not relying here on Walker, although I think lawfully I could, but here the uncontested portions of the presentence report reflect that on August 14 of 2019 the defendant's girlfriend purchased a Taurus G2c 9 millimeter semi-automatic pistol.

Three weeks later, on September 9 of 2019, law enforcement responds to a 911 call reporting that the defendant is threatening to shoot people using a small black handgun, which is consistent in appearance with the Taurus

that had just been purchased three weeks earlier by Defendant's girlfriend.

Defendant flees the area before law enforcement can arrive. Witnesses advise that, among other cars that they know the defendant drives, is a silver Chrysler 300, so you fast forward then about six weeks and officers find the silver Chrysler 300. Defendant's inside of it. Officers recognize the vehicle from the earlier incident in September. They know the defendant's the typical driver of it. They know he has active warrants for his arrest. They approach the vehicle. It smells of marijuana.

Defendant was asked to step out of the car. He repeatedly refuses to do so. Numerous officers have to report to secure the scene, to assist. Defendant's eventually removed from the car and arrested, and they find the Taurus on him, the same gun that his girlfriend had purchased back in August. That is sufficient, in my view, to establish that the defendant committed the felony offense of Assault While Using OR Displaying a Weapon. Whether they're the same weapon or not, it's still relevant conduct.

Defendant's not allowed to have any gun, whether it's this Taurus or some other gun. This is all happening over, you know, less than a two-month period of time -- I guess two months and a week from the purchase of the gun to its seizure, and in the middle of that is the September

incident. It's all in the same geographic area. It's all, frankly, consistent with the defendant's history of gun violence and similar behavior, and, in my view, it establishes that this adjustment applies.

So with that finding, I do adopt the guideline calculation contained within the filed presentence report that starts at a base offense level 20. There's the 4-level increase we just discussed. There's a 2-level decrease for acceptance of responsibility.

Is the Government moving for that third level as well?

MR. CRONK: Yes, your Honor.

THE COURT: So that leaves us at a total offense level 21. Defendant is a criminal history category of 6. This gives us an Advisory Guideline Range of 77 to 96 months imprisonment. Probation of 1 to 5 years is allowed by statute but not recommended by guidelines. Supervised release of 1 to 3 years is recommended. This adjusted fine range is $15,000 to $150,000, although I don't intend to pose a fine. There is a special assessment of $100.

Let's turn then to the Government's motion for an upward departure for underrepresented criminal history.

Mr. Cronk, any additional evidence or argument on that you'd like to present?

MR. CRONK: No, your Honor.

THE COURT: Mr. Tindal?

MR. TINDAL: Your Honor, I think it's difficult for me to identify how the criminal history would be underrepresentative when he is a Category 6. The offenses which are not scored are not particularly egregious or reflected in terms of how it should weigh into this particular circumstance. Your Honor, we think a Category 6 fully encompasses the criminal history here and is fairly representative --

THE COURT: I disagree. I think here his criminal history is underrepresented. There are Category 6 offenders, and then there's what's going on in this case, and USSG 4A1.3(a) provides that a Court may departure upward based on the inaccuracy of a criminal history category where "reliable information indicates the defendant's criminal history category substantially underrepresents the seriousness of Defendant's criminal history or the likelihood that the defendant will commit other crimes."

The guidelines specifically talk about -- in case law talks about what to do when you have a Category 6 offender and that's essentially since you can't move kind of horizontally across the categories, you move down in the base offense levels, and that's what I'm going to do here, but I want to explain why. So first of all, we have a great deal of unscored serious conduct here.

It starts -- Defendant's criminal history starts way back at 13 with juvenile adjudications. None of these things receive any points. They include delivery of heroin, possession of heroin, possession of a stolen auto, criminal trespass to a vehicle, possession of cocaine, possession of another stolen auto, criminal trespass to a vehicle. All of those happened between the ages of 13 and 16.

Then Defendant gets moved to adult court, and he has unscored adult criminal convictions for domestic battery, felony aggravated use of a weapon, which involves him fleeing the scene and leaving behind 24 bindles of crack cocaine and a handgun, another aggravated unlawful use of a weapon which is him again fleeing from police and dropping another handgun, providing false information to law enforcement, an aggravated assault.

All of those are very serious offenses for which he got no points. Then when you look at his scored criminal history, he has, you know, continuing with the pattern we saw start when he was young, receiving and possessing and selling stolen vehicle. He's got his federal conviction for Conspiracy to Distribute and Possession with Intent to Distribute Heroin. That came in 2006. He got 84 months in prison. He was on supervised release up until 2017.

When you look at how he performed during that prior incident, there are a whole plethora of problems when he's in

BOP. He has disciplinary incident after disciplinary incident, including being absent from assignment, being in unauthorized areas, possessing intoxicants, fighting, refusing to take alcohol tests, being insolent toward staff, two separate assaults, possessing dangerous weapons on two separate occasions, refusing orders, being disruptive on two different occasions, engaging in sexual acts, two incidents where he was found to have committed indecent exposure, phone abuse, threatening bodily harm, and he escaped.

He also has convictions for resisting a police officer, reckless discharge of a firearm from 2016, which was originally charged as an Attempted Murder, another possession of a firearm as a felony conviction, possession of controlled substances, two convictions for assault causing bodily injury in which he lunged into an occupied car and grabbed the keys and pulled the victim out of the car by her hair, threw her on the ground, hit her in the face and stomach, telling her that he would shoot and kill her, chased her into her residence before beating her more and then damaging her vehicle, possession of marijuana, and for all of that, he gets 15 criminal history points.

Then he goes to the Muscatine County Jail pending resolution of this case, and while he's been there, he's incurred 31 disciplinary violations, including violations for assault, multiple instances of causing facility emergencies,

demonstrating or encouraging others to demonstrate, refusing lawful orders, harassing correctional staff, covering up lights, vents or cameras, among other things, and I'm astounded by this.

He manages to fraudulently file for and receive unemployment benefits while he's sitting in the jail totaling more than $2400 in new fraud. All of that, to me, is very different than even our standard criminal history Category 6 person and so here I do grant the motion of the Government. I do move up Defendant's base offense level by one. I can easily go, in my view, more than one, but here I go one, and it creates a new guideline range of 84 to 105 months imprisonment.

Mr. Cronk, what is your suggested sentence here?

MR. CRONK: Your Honor, it's the Government's position that Mr. Warfield is not going to comply with the law under any circumstances. He's never learned how to comply with the law or, if he has, he's decided repeatedly not to. I don't expect that when he's through with whatever sentence the Court imposes, that he's gonna do that tomorrow or next year while he's in custody or when he gets on supervised release.

There is absolutely no reason to believe that Mr. Warfield's gonna comply with the law, and under 3553 (a), there are two factors or at least two factors that I think are important for the Court to weigh heavily, and that is No. 1,

just punishment for this offense, and No. 2, to protect the public from Mr. Warfield. Unfortunately, I don't think the Court can do either one of those things in this case because the statutory maximum for being a felon in possession of a firearm is only ten years, and it should be higher, but it's not. The Court should impose 120 months in prison.

THE COURT: Thank you, Mr. Cronk.

Mr. Tindal?

MR. TINDAL: Your Honor, the reasons for an aggravated sentence the Court's already articulated and as a result gone up a criminal history -- guideline sentence of 1, and so within that range there is mitigating circumstances. Part of those mitigating circumstances is that the defendant has been in custody since 2019. 2019 to the current date is probably the hardest stretch of county jail time anyone has or could do in recent memory.

COVID 19 closed down all the court systems in early 2020, and that is a condition that lasted for many, many, many months, not so much in the federal court system here in terms of duration but in terms of jail practices and the ability to see family, the ability to communicate with friends. That should be taken into account in terms of the Court's ultimate sentence here.

In addition to that, the defendant has pled guilty. It should receive and has received three levels for acceptance

of responsibility, so under the circumstances and based upon the Court's analysis in terms of going up one base offense level in this, we would argue for the bottom of that particular guideline.

THE COURT: Any program or placement requests?

MR. TINDAL: Closest to home within his security conditions. Excuse me. Forgive me. He had -- my client had indicated he would like to go to --

(Discussion held off the record between counsel and Defendant)

MR. TINDAL: Your Honor, the defendant would request a placement at either Memphis or Pollock in Louisiana, P-o-l-l-o-c-k.

THE COURT: Okay. Mr. Warfield, is there anything you'd like to say at this time?

THE DEFENDANT: Can I talk to my attorney one second?

THE COURT: Yep.

(Discussion held off the record between counsel and Defendant)

THE COURT: Anything you'd like to say?

THE DEFENDANT: Yeah. I'm trying to kind of like go over and try to understand what's going on because right now I don't really know what's going on at this point, from what I talked about the last couple days with my attorney.

THE COURT: What are you confused about?

THE DEFENDANT: Like, now it's like when we went

over it was at --

(Discussion held off the record between counsel and Defendant)

THE DEFENDANT: It was like 77 to 96 months, and now you're telling me it's changed, so I'm sitting here trying to see why it's changed because I'm, like, kind of confused because I don't know what's going on. It's like everything's like being denied my way and I'm like, you know, this ain't no fight to help me. Some of the stuff that's being said is, like, just outrageous, like, outrageous. It's making me sound like a bad individual when it's not the whole scenario, it's not the case, you know, so I'm just trying to understand it, like, what's going on.

THE COURT: Your original range was 77 to 96 months, but the Government moved to increase that range, arguing that your criminal history category was insufficient, and I agreed with the Government that that was true based on your record and based on your behavior at the jail, and so I increased your base offense level. Your lawyer argued against that. I overruled him. I found that the 4-level increase applied. Your lawyer argued against that both in writing and here in court today, but I ruled against you on that as well.

In making the decisions I made, I'm only relying on the uncontested portions of your presentence report, in other words, the parts of your presentence report that you previously said were true, and so I understand you haven't

        enjoyed the decisions I've made today, but there was nothing your lawyer could do about that that he hasn't tried to do for you.

        Is there anything you'd like to say before I decide what sentence to impose?

        THE DEFENDANT: No, ma'am.

        THE COURT: All right. In this case I have considered all of the factors under 3553(a) and the advisory guidelines and the statutory penalties. I've already outlined what the offense was in making my decision on the 4-level enhancement. The only thing that I didn't articulate then was that when Defendant was ultimately booked in at the jail, they found marijuana in his shoe. Other than that, I had outlined all of the circumstances that are relevant here.

        Defendant is 39. He was born and raised in Chicago. He was one of seven children born to parents who were young teens at the time his older siblings were born. He grew up in a violent neighborhood. He joined the Black Disciples as a young man and remained in that gang for nearly 20 years. He has a 15-year-old son. He's in good physical health. He has no history of mental illness. His substance abuse history reaches back to 11 for marijuana and 17 for alcohol.

        He denies any other substance abuse history. Defendant left school in the 7th or 8th grade because, in his words, he needed to make a living on the streets. He earned

    his GED while he was in Bureau of Prisons custody last. He's been employed kind of brief stints in a variety of positions, and I've already thoroughly gone through his criminal history record, which is very extensive, quite violent and continued even in placements such as the BOP or the jail and, of course, we have the new criminal conduct that happened while he was in the jail involving the unemployment benefit fraud that he had going on.

The only mitigating circumstance I could find in this case is that the defendant plead guilty, and so rather than go to 120 months here, which I think is a deserved sentence given what we're looking at, I'm going to give him the top of the new range, which is 105 months, to give him some credit for acceptance of responsibility. I will recommend to the Bureau of Prisons that they place him in Memphis or Pollock, Louisiana, if he qualifies for those institutions.

When Defendant concludes his term of imprisonment, he'll be on supervised release for three years. That term of supervision will require all the standard conditions of supervision as well as a program of testing and treatment for substance abuse. Defendant is prohibited from using alcohol in any amount of any kind while he's under supervision or participate in cognitive behavioral treatment programming. Defendant is prohibited from knowingly associating with or

communicating with any member of the Black Disciple criminal street gang or any other criminal street gang, and he has our standard search condition.

I find the defendant does not have the ability to pay a fine, and no fine will be imposed. There is no restitution. Defendant has to pay the special assessment of $100. I order forfeiture of the firearm as set forth in the preliminary order of forfeiture filed May 13 of 2022 at Docket 65.

Mr. Cronk, I don't think we have any counts to be dismissed, do we?

MR. CRONK: No, your Honor.

THE COURT: So the last thing we'll talk about then is your right to appeal. Mr. Warfield, you have 14 days from today to appeal. If you decide you want to appeal, let Mr. Tindal know. He'll file the paperwork for you. It won't cost you anything. Mr. Tindal will handle your appeal. That will not cost you anything either. In the event a notice of appeal is not filed in the next 14 days or two weeks, you forever give up your right to challenge this particular sentence.

Mr. Cronk, anything else?

MR. CRONK: No, your Honor.

THE COURT: Mr. Tindal, anything else?

MR. TINDAL: Not at this time, Judge.

THE COURT: Mr. Warfield, do you have any other

questions I can answer right now?

THE DEFENDANT: No.

THE COURT: Okay. Ms. Wolff?

MS. WOLFF: No, your Honor.

THE COURT: All right. We are adjourned.

(Wherein the hearing concluded at 1:29 p.m.)

REPORTER'S CERTIFICATION

I, Debra Thornburg, a Certified Shorthand Reporter of the State of Iowa and Federal Official Realtime Court Reporter in and for the United States District Court for the Southern District of Iowa, do hereby certify, pursuant to Title 28, United States Code, Section 753, that the foregoing is a correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformity with the regulations of the Judicial Conference of the United States.

/s/ Debra M. Thornburg

Debra M. Thornburg
Official Court Reporter
United States District Court
Southern District of Iowa

Date: October 20, 2022